IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Criminal Action No. 06-13-JJF |
| ) | |
| DEMETRIUS BROWN, ) | |
| ) | |
| Defendant. ) | |

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

NOW COMES the United States of America, by and through its attorneys, Colm F. Connolly, United States Attorney for the District of Delaware, and Robert F. Kravetz, Assistant United States Attorney, and submits proposed findings of fact and conclusions of law relating to an evidentiary hearing conducted to resolve contested sentencing issues.

On June 13, 2007, this Court held an evidentiary hearing in order to determine whether 77 grams of cocaine base that Wilmington police officers recovered from a vehicle on the 2200 block of North Pine Street on December 9, 2005, should be attributable to Defendant Demetrius Brown as relevant conduct for purposes of establishing his sentencing guidelines range. At the hearing, the Government established by a preponderance of the evidence that Defendant, an admitted crack cocaine dealer, possessed with the intent to distribute the cocaine base that was found in the car. Accordingly, for the reasons set forth in greater detail below, the Government requests the Court to find for sentencing purposes that Defendant was responsible for a total of 81.3 grams of crack cocaine.

**I.    Procedural Background**

On February 7, 2006, a federal grand jury indicted Defendant Demetrius Brown on two counts of possession with intent to distribute cocaine base. Count one charged that, on or about December 9, 2005, Defendant possessed with the intent to distribute 50 grams or more of cocaine

base, in violation of 21 U.S.C. § 841(a) & (b)(1)(A). Count two charged that, on or about December 14, 2005, Defendant possessed with the intent to distribute a quantity of cocaine base, in violation of 21 U.S.C. § 841(a) & (b)(1)(C). On April 3, 2007, Defendant entered an open plea to count two of the Indictment, in which he acknowledged that he possessed with intent to distribute 4.3 grams of cocaine base. The parties requested the Court to hold an evidentiary hearing to determine whether the amount of cocaine base charged in count one of the Indictment should be attributable to Defendant as relevant conduct for sentencing purposes.[1] See U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§ 1B1.3 & app. notes 8-9(B), 2D1.1. On June 13, 2007, the Court held the evidentiary hearing, during which the Government called two witnesses – Wilmington Police Detective Thomas Looney and Rashaun J. Baul. Defendant testified on his own behalf.

At the conclusion of the hearing, the Court decided at the suggestion of the parties to hold the briefing schedule for proposed findings of fact and conclusions of law in abeyance pending the United States Court of Appeals's decision in United States v. Fisher, 502 F.3d 293 (3d. Cir. 2007).[2] In Fisher, the Court of Appeals held that district courts are to apply a preponderance of the evidence standard to determine disputed factual issues at sentencing. Id. at 305-06, 310. Fisher's counsel, the Federal Public Defender's Office for the District of Delaware, informed the parties that it was not going to request the Third Circuit to consider the case en banc.

Against that procedural backdrop, the Government sets forth the following proposed findings of fact and conclusions of law.

---

[1] The Government represented that it would dismiss count one of the Indictment at the time of sentencing.

[2] The parties disagreed over the applicable burden of proof that the District Court should apply in ruling on disputed factual issues. Defendant argued that a clear and convincing evidence standard was appropriate, while the Government asserted that contested factual issues should be determined by a preponderance of the evidence. Fisher resolved the dispute in the Government's favor.

2

**II.     Proposed Findings of Fact**

1.      Detective Thomas Looney is a seventeen-year veteran of the Wilmington Police Department. For the past eleven years he has served as a detective in the drug unit, and he is also currently assigned to the Drug Enforcement Administration ("DEA") as a provisional task force officer. Detective Looney has conducted numerous drug investigations which have resulted in hundreds of arrests.  July 13, 2007 Sentencing Hearing Transcript ("Tr.") at 6-7 (D.I. 46).

2.      On December 8, 2005, Detective Looney was working in a uniform capacity for the Wilmington Police Department. He received information from a reliable confidential informant that a black male known as "Meterman," or "Paceater," was selling crack cocaine out of a silver Chevrolet Lumina with Delaware temporary registration that was parked on the 2200 block of Pine Street.  Id. at 8

3.      The informant's tip was consistent with Defendant's past history. Defendant admitted at the evidentiary hearing that he has a history of selling cocaine and crack cocaine. He has several prior felony drug convictions, including maintaining a dwelling for keeping a controlled substance, trafficking between 5 to 50 grams of cocaine, and possessing a controlled substance within a thousand feet of a school zone. Defendant further admitted that he sold crack cocaine in the 2200 block of North Pine Street multiple times on December 14, 2005.  Id. at 127, 132, 134-136, 140.

4.      Defendant Demetrius Brown has been known by the nickname "Meterman" since he was a child. Id. at 134. Detective Looney knew that Defendant's nickname was "Meterman," and he and Defendant had several previous encounters. Id. at 8, 137-38. In fact, Defendant was so familiar with Detective Looney that he could identify Detective Looney by the sound of his voice. Id. at 128, 137.

5.      After Detective Looney received the informant's tip on December 8, he responded in his patrol vehicle to the 2200 block of Pine Street at approximately 8:30 p.m. Id. at 9. Detective Looney

3

parked his vehicle on the west side of the street and observed a silver Chevrolet Lumina with Delaware temporary registration XB329670, just as had been reported by the informant. Id. at 10-11, 83. He further saw three black males standing alongside the vehicle's driver-side door. Id. at 10.

6.      Detective Looney drove past the vehicle and recognized one of the males as Demetrius Brown. Brown was wearing a dark leather jacket that had black and white writing on the back, a hooded sweatshirt, jeans, and Timberland boots. Id. at 14. Although the other individuals were wearing dark clothing, Brown's jacket was unique and stood out to Detective Looney. Id. Detective Looney circled the block and settled in a concealed location to conduct surveillance. Id. at 14-15. From the concealed location, Detective Looney observed Defendant enter the driver's side of the Lumina, start the vehicle, and drive northbound on Pine Street. Id. at 16, 41. The other two individuals who had been seen with Defendant did not get into the car. Id.

7.      The next evening, December 9, 2005, Detective Looney again patrolled the area of the 2200 block of North Pine Street. He observed Defendant and four other individuals in front of a house at 2225 North Pine Street. Id. at 17-18, 128. As a narcotics detective, Detective Looney had received information in the past that illegal drugs were sold from that address. Id. at 84. Defendant was wearing the same clothing that he had worn the night before. Detective Looney drove past the group and told them to disburse. Id. at 17-18. As he continued driving north on North Pine Street, he noticed the silver Chevrolet Lumina approximately one-half block away from where Defendant and the group had been standing. Id. at 18-19.

8.      Detective Looney then circled the block in his patrol car. When he arrived back in the middle of the 2200 block of North Pine Street, he saw Defendant standing square to, and within inches of, the Lumina's driver-side door. Id. at 19, 48. Defendant spotted the patrol car coming toward him and started walking northbound away from the Lumina. Id. at 19, 128.

4

9.      Detective Looney drove up to Brown, rolled down his window, and asked Brown his name. Brown lied and said his name was "Donald Brown." Id. at 21, 128, 138-39. Detective Looney told Defendant that he was lying, and that he knew his real name was Demetrius Brown with the nickname "Meterman." Id. Defendant acknowledged that he had lied about his name. Id. As Detective Looney put his patrol car in park, he told Defendant to remain in the same place and not to run away. Id. at 21. Despite this directive, Defendant took off running southbound on Pine Street. Id. at 21, 129, 139.[3] Detective Looney attempted to pursue Defendant on foot, but he was unsuccessful in catching him. Id. at 22. While in foot pursuit of Defendant, Detective Looney heard a plastic item hit the ground at around the corner of 23rd and Pine Streets. Id. at 22, 61, 86. After the foot chase was over, Detective Looney returned to where he heard the plastic item hit the ground and retrieved a plastic electronic scale of a type typically used by drug dealers to weigh narcotics for distribution. Id. at 22-23; Govt's Ex. 10.

10.     Detective Looney then returned to the Lumina. When he looked inside the car, he saw numerous clear knotted plastic bags that contained an off-white chunky substance consistent with crack cocaine. Detective Looney saw in the rear of the vehicle a plastic bag that also contained an off-white chunky substance, as well as an additional plastic bag on the center of the car's bench seat. Tr. at 24; see also Exs. 3-5.

11.     The vehicle was towed back to the Wilmington Police Station. There, the car was opened and Detective Looney was able to retrieve the items that he saw inside the Lumina. He uncovered seven knotted plastic bags containing cocaine base that were on the front passenger seat. Tr. at 25; Ex. 1, 1A, 3. An additional bag containing cocaine base was fond in a pouch behind the driver's

---

[3]Defendant acknowledged at the hearing that he fled from police officers on at least one other occasion, in September 2005, in which he had on him illegal narcotics. Id. at 139.

5

seat. Tr. at 25; Exs. 1, 1A, 4. Detective Looney found inside the plastic bag on the car's bench seat a glass Pyrex pot, used by drug dealers to cook powder cocaine into crack cocaine, with white residue indicative of powder cocaine on the rim. Tr. at 25, 27-28; Ex. 5. The total amount of cocaine base found in the Lumina was 77.0 grams. Tr. at 3-4; Ex. 1, 1A.[4]

12.  After the vehicle was searched, it was towed to a Wilmington Police Department tow lot. Tr. at 28. On December 16, 2005, Detective Looney obtained keys from Diver Chevrolet to open the Lumina's trunk. Detective Looney retrieved from inside the trunk a box of plastic sandwich bags that were similar to the bags containing crack cocaine that were found in the passenger compartment of the Lumina. Id. at 34-35. Such bags are commonly used by drug dealers to package crack cocaine. Id. at 35.

13.  Detective Looney conducted a motor vehicle records check on the temporary registration of the Lumina. That records check stated that the vehicle was registered to Rashaun Baul. Id. at 29. Baul operates a business that, among other things, buys and sells cars. Id. at 95. Detective Looney interviewed Baul on December 14, 2005. Baul told Detective Looney that he had purchased the Lumina from Goodwill Industries on November 23, 2005, at which time he acquired the temporary tags that were on the vehicle. Id. at 95-96; Exs. 11-13. Baul sold the vehicle to a black male he knew as "Meterman" on November 26, 2005, for $1,800.00 in cash. Tr. at 100; Ex. 13.[5] At the time Baul sold the vehicle to Defendant, there were no items left inside the vehicle. Tr. at 102. Baul

---

[4] The parties further stipulated that the cocaine base found in the vehicle was maintained in the proper chain of custody until submitted to the DEA's Northeast Regional Laboratory for analysis. Tr. at 3-4; Ex. 1, 1A. Although several latent fingerprints were found on the plastic bags, those prints were not suitable for identification purposes. As Detective Looney testified, that meant that it was impossible to link the fingerprints to **any** individual in the world, including Defendant. Id. at 73, 88-91.

[5] "Meterman" contacted Baul about the Lumina, which Baul had placed in a parking lot at the corner of 12th Street and Governor Printz Boulevard marked "For Sale." Id. at 98.

6

wrote on the reverse of the bill of sale "Sold to Meter Man on 11/26/05." Id. at 101; Ex. 13.[6] Detective Looney showed Baul a six-person photo array that he had generated, which contained Defendant's photo, and Baul instantly selected Defendant as the individual to whom he sold the vehicle. Tr. at 30-31, 106, Ex. 8.

14. According to Baul, Defendant subsequently contacted him approximately a week after he bought the vehicle because it had broken down on Governor Printz Boulevard. Tr. at 32, 102. Baul placed a new transmission in the vehicle at the cost of $800, and Meterman picked up the car several days later. Id. at 103. At the time Baul fixed the car, there were no items in the passenger compartment or trunk in the vehicle. Id. at 104. Detective Looney showed Baul a second six-person photo array, and Baul again chose Defendant's picture without hesitation as the individual for whom he replaced the car's transmission. Id. at 33, 107; Ex. 9.

### III.  Proposed Conclusions of Law

1. In order to demonstrate that Defendant possessed with the intent to distribute cocaine base, the government must prove by a preponderance of the evidence that: (1) that on or about December 9, 2005, the defendant knowingly or intentionally (2) possessed (3) with the intent to distribute (4) a quantity of cocaine base. United States v. Lacy, 446 F.3d 448, 454 (3d Cir. 2006).

2. The Government satisfied each of the elements in this case. Constructive possession exists if an individual "knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons." United States v. Blackston, 940 F.2d 877, 883 (3d Cir.1991) (quoting Black's Law Dictionary 1047 (5th ed. 1979)). The evidence established that Defendant had dominion and control over the Chevy Lumina,

---

[6]Baul did not transfer the vehicle into Defendant's name because the sale took place at 8:30 p.m. in the evening, and Defendant told Baul that he wanted to put the car in his aunt's name to obtain cheaper insurance. Id. at 101.

as well as the crack cocaine and other paraphernalia discovered within it. Defendant purchased the Chevy Lumina from Rashaun Baul in late-November 2005, and brought it back in for repairs about a week later. At the time the car was sold and repaired, there were no other objects inside the vehicle. Detective Looney observed Defendant driving the Lumina on the 2200 block of North Pine Street on December 8, 2005. Defendant acknowledged at the hearing that he had prior encounters with Detective Looney, and that the two were familiar with one another. Thus, there is no reason to question Detective Looney's assertion that Defendant operated the vehicle on December 8. On December 9, 2005, Detective Looney saw Defendant standing square within inches of the driver's side door of the Lumina -- as if he was going to enter the vehicle and drive away as he did the previous day. These facts relating to Brown's purchase, operation, and intended use of the Lumina lead to the conclusion that he possessed the crack cocaine inside the vehicle. See United States v. Iafelice, 978 F.2d 92, 97 (3d Cir. 1992) ("Common sense counsels that an owner and operator of a vehicle usually has dominion and control over the objects in his or her vehicle of which he or she is aware, and usually knows what is in that vehicle.").

3.    Moreover, when Detective Looney encountered Defendant, Defendant admittedly supplied him with a false name then ran away. Defendant's flight, coming on the heels of the encounter with Detective Looney adjacent to the Lumina, is additional evidence that he possessed the crack cocaine. See United States v. Green, 25 F.3d 206, 210 (3d Cir. 1994) (stating that evidence that the defendant fled after spotting a law enforcement officer and acknowledging his presence was admissible to prove consciousness of guilt). Finally, as Defendant ran away from detective Looney, he dropped a plastic electronic scale of a type commonly used by drug dealers to weigh illegal drugs for distribution purposes. Such evidence is further proof that Defendant not only possessed the distribution quantity of crack cocaine found within the Lumina that he owned and operated, but also

that he intended to weigh drugs in order to distribute them to other people. Iafelice, 978 F.2d at 97 (evidence that defendant used beeper during drug sale to undercover drug agent and owned and drove vehicle used to transport drugs supported jury finding that defendant had constructive possession of drugs and intended to distribute them).

4. Additional evidence demonstrates that Defendant possessed the large quantity of crack cocaine with the intent to distribute it. In addition to the scale that was recovered, Detective Looney found a large quantity of crack cocaine with in the Lumina which was packaged in separate bags for distribution purposes. Detective Looney also recovered from the vehicle a glass pot typically used by crack cocaine dealers to cook powder cocaine into crack cocaine. The glass pot contained a white residue consistent with powder cocaine that had been baked into crack cocaine. A search of the Lumina's trunk further revealed numerous plastic baggies that are typically used by drug dealers to distribute illegal drugs. The bags were similar to the bags of crack cocaine found inside the Lumina, as well as the plastic bag containing 4.3 grams of crack cocaine that was on Defendant's person when he was arrested on December 14, 2005. See, e.g., United States v. Johnson, 302 F.3d 139, 149 (3d Cir. 2002) (holding that there was sufficient evidence that the defendant possessed with the intent to distribute crack cocaine and other drugs based upon the manner in which the drugs were packaged for distribution, as well as the presence of drug paraphernalia).

5. Based upon these uncontroverted facts, the Government proved by a preponderance of the evidence that Defendant possessed with the intent to distribute the 77.0 grams of crack cocaine found in the Chevy Lumina.

6. Having determined that Defendant is responsible for possessing with the intent to distribute the drugs inside the Lumina, the Court must next consider whether those drugs should be included as Defendant's relevant conduct for the purpose of calculating his sentencing guidelines offense

level. Defendant pleaded guilty to possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C). As a result, Defendant's guidelines offense level is governed by the Drug Quantity Table set forth in § 2D1.1(c). That table sets forth a graduated sentencing scheme with various reference points depending upon the type and quantities of drugs that the District Court determines is attributable to the defendant as offense conduct. In calculating the appropriate offense level under § 2D1.1, "[t]ypes and quantities of drugs not specified in the count of conviction may be considered in determining the offense level." U.S.S.G. § 2D1.1, app. note 12 (citing U.S.S.G. § 1B1.3(a)(2)). See United States v. Torres, 926 F.3d 321, 324 (3d Cir. 2001) (noting that additional quantities of drugs included in counts which were dropped as part of a plea bargain, nevertheless, may be considered for sentencing); United States v. Williams, 917 F.3d 112, 114 (3d. Cir. 1990) (holding that the district court may consider drug quantities outside the count of conviction to determine the defendant's offense level).

7. The United States Sentencing Guidelines provide that a defendant's relevant conduct for sentencing purposes includes "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction[.]" U.S.S.G. § 1B1.3(a)(2) & app. notes 8-9. "Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity between the offenses, the regularity of the offenses, and the time interval between the offenses." U.S.S.G. § 1B1.3, app. note 9(B).

8. Here, Defendant's December 9, 2005 offense should be considered as the same course of conduct as his conviction for the December 14, 2005 offense. On both December 9, 2005, and December 14, 2005, Defendant distributed or possessed with the intent to distribute the same drug: crack cocaine. On December 9, 2005, Defendant possessed with intent to distribute 77.0 grams of

crack cocaine, while on December 14, 2005, Defendant was arrested following a traffic stop in which he had 4.3 grams of crack cocaine in the sleeve of his coat. The crack cocaine found on Defendant after the December 14 traffic stop was packaged in a clear plastic bag, similar to the crack cocaine and plastic bags found by Detective Looney in the Chevy Lumina. Defendant engaged in crack cocaine transactions with a degree of regularity – he admitted he took part in multiple crack cocaine drug transactions on December 14, 2005, on the 2200 block of Pine Street, as well as in other crack cocaine transactions in the past. Furthermore, the two offenses took place within five days of each other on the same street block in Wilmington. Based upon these factors, the 77.0 grams of crack cocaine found by Detective Looney on December 9, 2005, should be considered as relevant conduct for sentencing purposes. See United States v. Colon, 474 F.3d 95, 98-99 (3d Cir 2007) (holding that a drug delivery that occurred two weeks after an event for which defendant acknowledges he would have been responsible constituted for relevant conduct under Section 1B1.3); see also United States v. Graciani, 61 F.3d 70, 74 (1st Cir. 1995) (concluding that the amount of crack cocaine the defendant agreed to sell to an undercover agent nine days after the defendant had sold the agent crack and powder cocaine was part of the same course of conduct as the offense of conviction); United States v. Wilson, 31 F.3d 510, 516-17 (7th Cir. 1994) (holding that the amount of drugs involved in a drug transaction that took place four days earlier than the offense of conviction was properly included as relevant conduct under § 1B1.3(a)(2)). United States v. Santiago, 906 F.2d 867, 873-74 (2d Cir. 1990) (finding that heroin transactions that took place over the course of eight months could be considered as the same course of conduct as the substantive heroin distribution offense).

9.      Thus, because Defendant possessed with the intent to distribute the 77.0 grams of cocaine base found inside the Chevrolet Lumina on December 9, 2005, his relevant conduct for sentencing purposes is 81.3 grams of cocaine base. U.S.S.G. §§ 1B1.3, 2D1.1.

## IV.     Conclusion

The United States proved by a preponderance of the evidence that 81.3 grams of cocaine base should be attributable to Defendant for purposes of calculating his sentencing guidelines offense level. Because Defendant was responsible for at least 50 grams, but less than 150 grams of cocaine base, his base offense level should be Level 30. U.S.S.G. § 2D1.1(c)(5) (2007).

                                              Respectfully submitted,

                                              COLM F. CONNOLLY
                                              UNITED STATES ATTORNEY

                                      By: /s/ Robert F. Kravetz
                                             Robert F. Kravetz
                                             Assistant United States Attorney

Dated: November 21, 2007